**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Lane, | No. CV 04-0606-PHX-RGS |
| Plaintiff, | **ORDER** |
| vs. | |
| Jo Anne B. Barnhart, Commissioner, Social Security Administration, | |
| Defendant. | |

Plaintiff seeks judicial review of the Social Security Administration's decision denying his application for Social Security disability benefits. Pending before the Court are Plaintiff's Motion for Summary Judgment [Doc. # 11] and Defendant's Cross-Motion for Summary Judgment [Doc. # 15].

**I.    PROCEDURAL BACKGROUND**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits under Titles II and XVI, respectively, of the Social Security Act on February 8, 1994. [*See* Transcript of Administrative Record ("Tr.") at 98-100, 111-112]. The applications were denied initially [Tr. 101-104, 107-110] and upon reconsideration [Tr. 113-117, 118-122].  Plaintiff appeared and testified before an Administrative Law Judge ("ALJ") on September 2, 1997.  [Tr. 688]  On October 9, 1997, the ALJ issued a decision

1    finding that Plaintiff was not disabled. [Tr. 685-695] The Appeals Council denied Plaintiff's

2    request for review on March 24, 1999.  [Tr. 710-712]

3        Plaintiff subsequently filed an action for judicial review under case number CV 99-

4    1504-PHX-CLH (SLV) ("*Lane I*").  [Tr. 717]   Thereafter, the Office of Hearings and

5    Appeals informed Plaintiff that the cassette recording of the administrative hearing had been

6    lost. [Tr. 718] On August 15, 2000, pursuant to the parties' stipulation, the District Court

7    ordered that the case be remanded to an administrative law judge for a *de novo* hearing. [Tr.

8    717-719].

9        Accordingly, the Appeals Council vacated the ALJ's October 9, 1997 hearing decision

10   and remanded the case for a *de novo* hearing and decision. [Tr. 720-721]  On October 7,

11   2002, Plaintiff and his attorney appeared at the *de novo* hearing, which was held at the

12   Arizona State Prison in Florence, Arizona, where Plaintiff was then incarcerated.[1]  [Tr. 71-

13   96]  On October 23, 2002, Plaintiff's attorney and two supporting witnesses, David Wayne

14   Smith, Ed.D, and Laurance Silverman, M.D., appeared at a supplemental hearing held at the

15   Social Security Administration hearing office in Tucson, Arizona.  [Tr. 42-70]  In a decision

16   dated February 28, 2003, the ALJ found that Plaintiff was not disabled.  [Tr. 15-29]  The

17   ALJ's decision became the Commissioner of Social Security's ("Commissioner's") final

18   decision when the Appeals Council denied Plaintiff's request for review.   [Tr. 7-8]

19   Thereafter, Plaintiff commenced this new action for judicial review pursuant to 42 U.S.C.

20   §§ 405(g) and 1383(c)(3).

21   / / /

22

23        [1]  At the time of the hearing, Plaintiff was serving a nine-year prison sentence based on his conviction
24   for two counts of aggravated assault, both felonies. [Tr. 76, 19]  The ALJ noted that the Commissioner's
     regulations preclude payment of Title II disability insurance benefits for any month during any part of which
25   an individual is confined to jail, prison or other penal institution for conviction of a felony.  *See* 20 C.F.R.
     § 404.468.  The ALJ also noted that the Commissioner's regulations preclude payment of Title XVI
26   supplemental security income benefits for any month throughout which an individual is a resident of a public
     institution, including jail or prison.  *See* 20 C.F.R. § 416.21.  [Tr. 19] Plaintiff had been in prison since May
27   5, 1995. [Tr. 76] Accordingly, the relevant period with respect to the issue of entitlement to benefits in this
     case was the period between Plaintiff's alleged onset date, September 1, 1993, and the date of his
28   incarceration, May 5, 1995. [Tr. 19]

1  ## II.     STANDARD OF REVIEW

2  The Commissioner's final decision that a claimant is not disabled will be upheld if the

3  findings of fact are supported by substantial evidence in the record as a whole and if the

4  Commissioner applied the proper legal standards. *Magallanes v. Bowen*, 881 F.2d 747, 750

5  (9th Cir, 1989).   Substantial evidence is more than a mere scintilla, but less than a

6  preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  It is such relevant

7  evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

8  In determining whether substantial evidence supports a decision, the Court considers

9  the entire record, weighing both the evidence that supports the Commissioner's conclusions

10 and the evidence that detracts from them. *Id.* "If the evidence can reasonably support either

11 affirming or reversing th[at] conclusion, the court may not substitute its judgment for that of

12 the [ALJ]." *Id.* If the evidence is inconclusive, "questions of credibility and resolution of

13 conflicts in the testimony are functions solely of the [Commissioner]." *Sample v. Schweiker*,

14 694 F.2d 639, 642 (9th Cir. 1982). But if on the whole record before this Court, substantial

15 evidence supports the Commissioner's decision, the Court must affirm it. *See Hammock v.*

16 *Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(G).

17 ## III.    THE ALJ'S DISABILITY DETERMINATION

18 To establish eligibility for disability benefits, a claimant must show that (a) he suffers

19 from a medically determinable physical or mental impairment that can be expected to result

20 in death or that has lasted or can be expected to last for a continuous period of not less than

21 twelve months, and (b) considering age, education, and work experience, the impairment

22 renders claimant incapable of performing the work he previously performed and incapable

23 of performing any other kind of substantial gainful work that exists in the national economy.

24 *See* 42 U.S.C. § 423(d)(1), (2)(A); *Reddick*, 157 F.3d at 721.

25 A claimant's disability is evaluated following a five-step sequential evaluation.  20

26 C.F.R. 404.1520(a);  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).   At the first step the

27 Commissioner considers whether the claimant engaged in substantial gainful activity after

28 the alleged onset date of his disability.  If so, benefits are denied.  §20 C.F.R.  404.1520(b).

1    At the second step, the Commissioner determines whether the impairment is severe. §20

2    C.F.R.  404.1520(c).  At the third step, the Commissioner considers  whether the claimant's

3    impairment meets or equals the medical listings contained in 20 C.F.R. § 404, Subpart P,

4    Appendix 1.   If a claimant meets the listing or his condition is the medical equivalency, he

5    is conclusively presumed to be disabled.  §§20 C.F.R.  404.1520(d), 416.925;  *Marcia v.*

6    *Sullivan*, 900 F.2d 172, 174 (9th Cir.1990).   If the claimant does not meet the listed criteria,

7    then the evaluation proceeds to step four, in which the Commissioner determines whether the

8    claimant's impairment prevents him from performing the work he performed in the past.  §20

9    C.F.R.  404.1520(e).  If the claimant is unable to perform his past work, then at step five, the

10   Commissioner bears the burden to establish that the claimant can engage in other substantial

11   gainful activity in the national economy in view of his age, education, and work experience.

12   §20 C.F.R.  404.1520(f).

13   In the present case, Plaintiff was born on February 13, 1953.  [Tr. 74]  Plaintiff

14   received an associate's degree from Pima Community College in aviation structural repair

15   and had been employed as an aircraft structural repairman at Evergreen Air Center.  [Tr. 75,

16   76]  Plaintiff alleged an inability to work since September 1, 1993, due to a right arm injury,

17   head injury, and restructuring of the face and jaw as a result of a motorcycle accident.  [Tr.

18   18, 101, 107]  Plaintiff's medical history is fully set forth in the ALJ's decision.  [Tr. 15-29]

19   The ALJ determined that Plaintiff had not engaged in substantial gainful activity since

20   the alleged onset of disability.  [Tr. 28]   The ALJ further concluded that Plaintiff's

21   impairment or combination of impairments are "severe" within the meaning of the

22   Regulations but they do not meet or medically equal a listed impairment.  [Tr. 28]  As a

23   result, the ALJ had to determine Plaintiff's residual functional capacity.[2]  [Tr. 28]  The ALJ

24   determined that Plaintiff's "capacity for sitting, standing and walking is unimpaired, and he

25   is subject to a ten pound lifting/carrying limitation, cannot use the arms above shoulder level,

26

27        [2]  The term "residual functional capacity" means the most an individual can do after considering the
     effects of physical and/or mental limitations that affect the ability to perform work-related tasks.  *See* 20
28   C.F.R. § 404.1545 and 416.945.

and must avoid exposure to work at heights . . . [and that] he has only mild limitations of the capacity to respond appropriately to supervision, co-workers and work situations." The ALJ further determined that although Plaintiff is unable to perform any of his past relevant work, he "has the residual functional capacity to perform a wide range of sedentary-to-light work" and that Plaintiff's "nonexertional limitations do not significantly narrow the range of alternative jobs contemplated under the rules." Accordingly, based on these findings, the ALJ concluded that Plaintiff is not under a "disability" and therefore is not entitled to Disability Insurance Benefits or Supplemental Security Income Benefits.  [Tr. 29]

## IV.    DISCUSSION

Defendant first requests that the present case be consolidated with CV 99-1504-PHX-CLV (SLV) (*Lane I*).  Defendant notes that *Lane I* was remanded pursuant to sentence six of sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3).  [Tr. 717-719]  Under a sentence six remand, a court retains jurisdiction over a case. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).  Accordingly, because the issues in the present case are the same as those in *Lane I*, the Court will order that the cases be consolidated.

In his Motion for Summary Judgment, Plaintiff argues that the ALJ (1) did not considered Plaintiff's physical impairment, which lasted more than twelve months, in his decision; (2) gave incorrect weight to the assessment of a treating physician; and (3) was biased in his handling of the hearing process.

### A.    Whether the ALJ Properly Considered Plaintiff's Physical Impairment Which Lasted Over Twelve Months

Plaintiff asserts that "there are two parts to [his] disability, physical and psychological."  Plaintiff notes that his treating physiatrist, Dr. Laurance Silverman, did not release him with respect to his shoulder until December 20, 1994, which is more that twelve months from his September 1, 1993 date of injury.  Plaintiff points out that the ALJ did not consider this twelve-month period in his decision and thus erred as a matter of law.  Defendant fails to address this argument in her brief.

1    The opinion of a treating physician is entitled to great weight. *Murray v. Heckler*, 722

2    F.2d 499, 502 (9th Cir. 1983).  If the ALJ wishes to disregard such an opinion, the ALJ must

3    make findings setting forth specific, legitimate reasons for doing so that are based upon

4    substantial evidence in the record.  *Id*.  In a December 20, 1994 assessment, Dr. Silverman

5    stated that "[a]t this point, [Plaintiff] may be eligible for some sedentary type of work not

6    involving any significant strain nor excess stress upon his right upper extremity and right

7    shoulder at present until he reaches a point of maximum medical improvement." [Tr. 376]

8    Plaintiff had not been released for work prior to this date, which is more than a year from his

9    September 1, 1993 onset date of disability.  The ALJ did not address this period of disability

10   in his decision.  The July 21, 1994 assessment of treating physician Dr. John Ruth is not to

11   the contrary.  [Tr. 340]  At that time, Dr. Ruth indicates that Plaintiff has unlimited capacity

12   with respect to his left upper extremity but has significantly limited capacity with respect to

13   his right upper extremity, but Dr. Ruth does not indicate that Plaintiff is able to return to

14   work.  In fact, Dr. Ruth states that he needs to see Plaintiff in two months in order to

15   reevaluate him with respect to his work status.  Based on the evidence discussed above, the

16   Court makes a finding that Plaintiff suffered from a physical impairment that lasted for a

17   continuous period of more than twelve months and was not able to return to gainful

18   employment during that time, and therefore Plaintiff was disabled during this period.  *See* 42

19   U.S.C. § 423(d)(1), (2)(A); *Reddick*, 157 F.3d at 721.  Accordingly, the Court will remand

20   this case to the ALJ for a determination of benefits as may be appropriate for the period of

21   time between September 1, 1993, and December 20, 1994.

22   **B.    Whether the ALJ Properly Rejected a Treating Physician's Opinion**

23   With respect to Plaintiff's alleged psychological disability, Plaintiff argues that the

24   ALJ improperly rejected the opinion of treating physician Dr. Silverman, who testified as a

25   witness at the October 23, 2003 supplemental hearing.  Plaintiff contends that the "continuing

26   issue with regard to [his] medical condition . . . is psychological."  Plaintiff maintains that

27   the "cognitive/psychological problems outlined by Dr. Rau, Dr. Mentzer, Dr. Smith, and Dr.

28   Silverman are not in conflict and there are no examining physicians with conflicting opinions

- 6 -

1   in the record." Plaintiff also appears to argue that the testimony of Dr. Silverman and Dr.

2   Smith should be given more "consideration" because "it is very difficult to get physicians to

3   testify at a Social Security hearing" and they "testified [] at their own expense."

4          Defendant argues that the ALJ properly rejected Dr. Silverman's opinion at the

5   hearing because his opinion conflicted with the assessment of treating physician John T.

6   Ruth, M.D. and that of treating psychologist James Rau, M.D., and because Dr. Silverman's

7   opinion was inconsistent with his written letter of December 20, 1994.

8          The opinion of a treating physician is generally entitled to more weight than the

9   opinion of a non-treating physician. *See* 20 C.F.R. § 404.1527(d)(2). "Because treating

10  physicians are employed to cure and thus have a greater opportunity to know and observe the

11  patient as an individual, their opinions are given greater weight than the opinions of other

12  physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). However, a treating

13  physician's opinion is not necessarily conclusive and an ALJ may disregard the opinion.

14  *Magallanes*, 881 F.2d at 751. An ALJ may reject the controverted opinion of a treating

15  doctor by presenting "specific and legitimate" reasons supported by substantial evidence in

16  the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

17         Dr. Silverman is a board-certified physical medicine and rehabilitation specialist who

18  was Plaintiff's attending physician, providing "medical management and [] therapeutic

19  treatment" to Plaintiff. [Tr. 58, 64] At the October 23, 2003 hearing, Dr. Silverman opined

20  that as of the end of 1994, Plaintiff's difficulty in walking as a result of a "foot drop"

21  problem, combined with cognitive and mental neurological dysfunction, "precluded him from

22  doing essentially anything at that time."[3] [Tr. 60] Dr. Silverman also stated that "cognitive

23  problems" were a "concern from day one." [Tr. 65]

24         Dr. Silverman's opinions, however, conflicted with the residual functional capacity

25  assessment of treating physician John Ruth, M.D. Dr. Ruth was an Assistant Professor of

26  Clinical Surgery in the Department of Surgery/Orthopedics at the University of Arizona

27  _____

28         [3] The time period was described as the end of 1994. [Tr. 60]

College of Medicine. [Tr. 340-341]  At the time of his assessment on July 21, 1994, Dr. Ruth had been following Plaintiff for approximately eleven months since the time of the accident. [Tr. 340]  Dr. Ruth determined that Plaintiff was unlimited in either sitting,  standing, or moving about; that he was unlimited in his ability to lift or carry with his left upper extremity; that he was limited to carrying approximately thirty to forty pounds with his right upper extremity; that he was unlimited in his ability to handle small objects weighing less than ten pounds; and that Plaintiff had no significant mental impairment.  [Tr. 340]

The ALJ set forth specific and legitimate reasons supported by substantial evidence in rejecting the controverted opinion of Dr. Silverman.  *See Andrews*, 53 F.2d at 1041.  In his lengthy and detailed decision, the ALJ noted that Dr. Silverman's testimony at the October 23, 2003 hearing was inconsistent with an assessment letter Dr. Silverman wrote on December 20, 1994.  [Tr. 25, 375-376]  In that letter, Dr. Silverman opined that "[a]t this point, Mr. Lane may be eligible for some sedentary type of work not involving any significant strain nor excess stress upon his right upper extremity and right shoulder at present until he reaches a point of maximum medical improvement." [Tr. 376]  In his decision, the ALJ related that when he questioned Dr. Silverman as to why he submitted a functional assessment that did not cite any cognitive limitations, Dr. Silverman responded that he could not recall to whom the letter was addressed, but it could have been written in response to a specific question.  The ALJ rejected that explanation as "vague and uncertain." [Tr. 25]  The ALJ found that Dr. Silverman's December 1994 assessment was "certainly open to the interpretation that he did not contemplate significant psychological limitations at that time . . . ."  [Tr. 25]  The inconsistencies in Dr. Silverman's opinions provided a proper reason for the ALJ to reject his hearing testimony.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (finding that the self-contradictory nature of treating physician opinion was "clear and convincing" reason for rejection).

The ALJ also rejected Dr. Silverman's opinion based on the contrary assessment of treating psychologist, James Rau, Ph.D. [Tr. 25]  The ALJ noted that Dr. Rau concluded that Plaintiff had a head injury "classified in the mild range" and that his depression was

1    "remitting nicely" and "only in the mild range to begin with." [Tr. 22, 759]   The ALJ

2    further noted that Dr. Rau stated that Plaintiff's degree of anxiety and depression was "mild"

3    and "fluctuating." [Tr. 758]  As treating physicians, the opinions of Dr. Silverman and Dr.

4    Rau would carry similar weight but for the inconsistencies in Dr. Silverman's opinions.

5    Because the record contained conflicting medical evidence, the ALJ was entitled to rely on

6    Dr. Rau's consistent assessments. [Tr. 25-26] *See Thomas v. Barnhart*, 278 F.3d 947, 956

7    (9th Cir. 2002) (holding that the ALJ is charged with determining credibility and resolving

8    conflicts in medical evidence).

9         In his Response Brief, Plaintiff argues that Dr. Silverman's testimony must be given

10   controlling weight because he treated Plaintiff for a longer period of time than either Dr.

11   Ruth or Dr. Rau; because Dr. Ruth's "medical records conflict his later assessment"; and

12   because Dr. Silverman testified without payment.

13        First, while length of treatment may be a consideration in an ALJ's assessment of a

14   medical opinion, it is not the determining factor, as Plaintiff contends.  Dr. Rau followed

15   Plaintiff during his fifteen-day stay at NovaCare Rehab Institute of Tucson following

16   Plaintiff's accident, where Plaintiff received supportive psychotherapy and

17   neuropsychological evaluation. [Tr. 758]  Dr. Rau was Plaintiff's treating psychologist at

18   this facility, and as such, especially well-qualified to render an opinion regarding Plaintiff's

19   mental status.  Further, Dr. Ruth followed Plaintiff for nearly one year, which is not an

20   insubstantial period of time.  The Court finds no merit in Plaintiff's contention that Dr.

21   Silverman's testimony must be given controlling weight simply because he treated Plaintiff

22   for a longer period of time than either Dr. Ruth or Dr. Rau.

23        Next, Plaintiff's assertion that Dr. Ruth's "medical records conflict his later

24   assessment" misstates the record.  Plaintiff points to Dr. Ruth's October 28, 1993 progress

25   note, in which Dr. Ruth states that Plaintiff had been to NovaCare Rehab Institute due to a

26   "significant closed head injury." [Tr. 289]  Plaintiff asserts that "[m]onths later . . . Dr. Ruth

27   advise[d] the state agency that the head injury was 'mild.'" [Tr. 340]  A review of Dr. Ruth's

28   July 21, 1994 assessment referred to by Plaintiff demonstrates that Dr. Ruth did not state that

Plaintiff's head injury was "mild," but rather that he did not believe that Plaintiff had "any significant mental impairment." [Tr. 340] The Court finds no conflict in Dr. Ruth's October 1993 notation that Plaintiff had been treated for a significant closed head injury and his assessment in July 1994 that Plaintiff had no significant mental impairment.

Plaintiff points to Dr. Ruth's October 28, 1993 progress note in which Dr. Ruth states that Plaintiff's "mental status is essentially normal today." Plaintiff baldly asserts that "[t]here was no examination," thus inferring that there was no basis for Dr. Ruth's opinion. Plaintiff points to nothing in the record to support this contention and therefore the Court declines to consider it.

Finally, while the record reflects that Dr. Silverman and Dr. Smith were not reimbursed for their testimony, as the ALJ explained, and the Court agrees, "the issue of disability must be resolved on the totality of the evidence, and it cannot be decided based on the reimbursement (or lack of reimbursement) of the witnesses or examiners." [Tr. 26]

Contrary to Plaintiff's argument, the ALJ evaluated in full all relevant evidence of Plaintiff's alleged mental impairments. [Tr. 20-27] In addition to considering the records of Dr. Ruth and Dr. Rau, the ALJ considered the examining physician opinion of William Mentzer, Ph.D., dated August 21, 1994, that Plaintiff's IQ scores fell within the average range of intellectual functioning. [Tr. 21, 342-347]. The ALJ also considered the March 12, 1995 report of David Wayne Smith, Ed.D, director of the Disability Assessment Clinic at the University of Arizona Health Sciences Center, in which he stated that Plaintiff had to be retrained for a different occupation taking Plaintiff's limitations into account. [Tr. 21, 359] Based on the foregoing, the Court finds that the ALJ's rejection of Dr. Silverman's opinion was supported by substantial evidence.

**C.    Whether the ALJ Was Biased in His Handling of the Hearing Process**

Next, Plaintiff contends that the ALJ was biased in his handling of the hearing process. Plaintiff argues that the ALJ rescheduled a hearing that originally had been set for June 5, 2002, at the Tucson Office of Hearings and Appeals, to a later date at Plaintiff's prison in an improper attempt to prevent Plaintiff's supporting witnesses, Dr. Silverman and

Dr. Smith, from testifying.  Plaintiff asserts that the ALJ knew "that the doctors would not take time out of their busy schedules to make the 4+ hour around (sic) trip to attend the hearing in prison."   The Court finds no evidence in the record to support Plaintiff's contention.  In fact, the ALJ explained his reason for holding the hearing at the Florence State Prison:

> Let the record reflect that this matter was originally scheduled as a telephonic hearing with the prisoner, with the attorney and myself being in Tucson.  That hearing was cancelled because we didn't have a hearing room to accommodate the witnesses brought by the attorney.  All of the hearing rooms were in use on that occasion.  So we re-established this as an in-person hearing at the Florence Prison and I understand that Mr. Salmi has requested a supplemental hearing to be held in Tucson at which time he will be bringing witnesses in to testify.  Mr. Lane is in a maximum-security unit that does not permit transporting him to Tucson.

[Tr. 73-74]  Plaintiff did not object, either at the time of the hearing or afterward, to the ALJ's explanation of events.  Furthermore, the ALJ granted counsel's request for a supplemental hearing, which was held on October 23, 2002, at which time the ALJ received the testimony of Plaintiff's supporting witnesses.  [Tr. 42-70]  In light of the foregoing, the Court finds no evidence of bias in the ALJ's change of venue to the prison.

## V.   CONCLUSION

The Court finds that the ALJ'S decision with respect to the period of time between September 1, 1993, and December 20, 1994, is not supported by substantial evidence and contains reversible error.  The Court further finds that the ALJ'S decision with respect to the relevant period of time after December 20, 1994, is supported by substantial evidence and is free from reversible error.  In addition, the Court finds no bias in the ALJ's handling of the hearing process; the ALJ afforded Plaintiff appropriate opportunities for a fair hearing.  Accordingly,

**IT IS ORDERED** directing the Clerk of the Court to consolidate the present case with CV 99-1504-PHX-CLH (SLV), with the case reflecting CV 04-0606-PHX-RGS as the primary number.

**IT IS FURTHER ORDERED** granting in part and denying in part Plaintiff's Motion for Summary Judgment.  [Doc. # 11]

1   **IT IS FURTHER ORDERED** granting in part and denying in part Defendant's

2   Cross-Motion for Summary Judgment. [Doc. # 15]

3   **IT IS FURTHER ORDERED** directing the Clerk of the Court to remand this case

4   to the ALJ for an award of benefits for the period of time between September 1, 1993, and

5   December 20, 1994.

6   **IT IS FURTHER ORDERED** affirming the ALJ's findings and decision with respect

7   to the relevant period of time after December 20, 1994.

8   **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in

9   accordance with this Order.

10   DATED this 31st day of August, 2007.

11

12

13

14

15

16

17

18

19

20

21

22

23

24   _____
     Roger G. Strand
25   Senior United States District Judge

26

27

28